IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| SENTRY SELECT INSURANCE COMPANY, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | No. 1:09cv119 (AJT/TCB) |
| CARMICKLE THOMPSON, *et al.*, ) ) | |
| Defendants. ) ) | |

## MEMORANDUM OPINION

This matter is before the Court on Plaintiff Sentry Select Insurance Company's Motion for Summary Judgment and on Defendant/Counter-Claimant Thompson's Motion for Summary Judgment. The central issue presented by these motions is whether defendant Eugene Brown is an "insured" under plaintiff Sentry Select Insurance Company's insurance policy. For the reasons stated below, Plaintiff Sentry Select Insurance Company's Motion is granted and Defendant/Counter-Claimant Thompson's Motion is denied.

### I. BACKGROUND

This action arises out of a car accident that occurred on June 3, 2005 between two of the defendants, Mary Carmickle Thompson ("Thompson") and Eugene Brown (individually and d/b/a R.L.B. Transport, "Brown") and the subsequent $1,700,000 judgment in favor of Thompson and against Brown and defendant Eagle Valley Trucking ("Eagle Valley") entered after trial on December 2, 2008 in Loudoun County Circuit Court (the "Loudoun County Lawsuit"). On February 6, 2009, Sentry Select Insurance Company ("Sentry") filed this lawsuit

against Thompson, Donald Milligan d/b/a C&T Trucking ("Milligan"), Brown, and Eagle Valley (collectively, the "Defendants").

In its Complaint, Sentry seeks a declaratory judgment that: (1) Sentry is not obligated to defend any person or entity in the Loudoun County Lawsuit or to indemnify any person or entity for any damages arising from the accident or the Loudoun County Lawsuit; and (2) Sentry is not obligated to pay any portion of the judgment entered against Brown or Eagle Valley in the Loudoun County Lawsuit. On February 27, 2009, Thompson filed her answer to Sentry's Complaint and a counterclaim against Sentry. In her counterclaim, Thompson seeks: (1) a declaratory judgment that Sentry is obligated to satisfy the balance of the judgment awarded to Thompson in the Loudoun County Lawsuit; and (2) a judgment against Sentry for the balance of the judgment awarded to Thompson in the Loudoun County Lawsuit in the amount of $730,232.20, together with interest, costs, and other appropriate relief.

On September 3, 2009, Sentry moved for summary judgment. In its motion for summary judgment, Sentry argues that none of the vehicles involved in the accident was covered under its insurance policy or any of the policy's attachments. Therefore, Sentry argues, it has no obligation to satisfy any part of the judgment awarded to Thompson as a matter of law. Also on September 3, 2009, Thompson moved for summary judgment. In her motion, Thompson argues that Sentry's policy, as modified by a so-called MCS-90 endorsement form, provides coverage for the losses resulting from the accident, including the balance of the judgment awarded to her in the Loudoun County Lawsuit, and on that basis requests that the court order Sentry to satisfy the balance of the judgment from the Loudoun County Lawsuit. Both parties filed memoranda of law in opposition to the motions for summary judgment. On September 17, 2009, a hearing was held on the parties' cross-motions for summary judgment.

## II. STATEMENT OF UNDISPUTED FACTS

The parties have entered into a Stipulation of Uncontested Facts ("Stipulations"), setting forth the following facts.

On June 2, 2005, at approximately 9:30 p.m., Thompson was driving a car northbound on James Monroe Highway, State Route 15, in Loudoun County, Virginia. Stipulations at ¶ 1. At the same time and place, Brown was driving a tractor-trailer rig south-bound, approaching Thompson. *Id.* at ¶ 2. Thompson's vehicle and Brown's tractor-trailer rig collided and Thompson sustained bodily injuries. *Id.* at ¶¶ 3-4.

The tractor Brown was operating at the time was owned by Eagle Valley and was a registered United States Department of Transportation ("USDOT") motor carrier. *Id.* at ¶ 7. The tractor was attached to a Trailmobile trailer (the "Trailmobile") owned by Milligan (doing business as C&T Trucking). *Id.* at ¶ 8. Milligan was authorized by the USDOT to broker loads in interstate commerce, and was also authorized to haul goods as a contract carrier. *Id.* Brown was using the Trailmobile with permission. *Id.* at ¶ 8.

Sentry had issued to Milligan insurance policy number CT739434-98093-051 (the "Sentry policy"), which was in effect at the time of the accident. *Id.* at ¶ 11. The Sentry policy scheduled two vehicles, neither of which was the tractor or Trailmobile involved in the accident. *Id.* at ¶ 12. Neither the tractor nor the Trailmobile was specifically described in the Sentry policy in any way as of the date of the accident. *Id.* at ¶¶ 13-14.

The Sentry policy contained an "Endorsement for Motor Carrier Policies of Insurance for Public Liability Under Sections 29 and 30 of the Motor Carrier Act of 1980," Form MCS 90 and MC 1622K (10-99), (the "MCS-90"). Stipulations at ¶ 15. The MCS-90 states, in part,

> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment

3

> recovered against the insured for public liability . . . regardless of whether or not each motor vehicle is specifically described in the policy.

Sentry Mem. in Supp., Exh. H (MCS-90). The MCS-90 provides that the insurer shall not be liable for amounts in excess of $750,000.00. *Id.*

Thompson filed a Complaint in the Circuit Court of Loudoun County, Virginia on or about May 30, 2007 against Brown and Eagle Valley. Stipulations at ¶ 5. On December 2, 2008, a trial was held, and a judgment was awarded in favor of Thompson against Brown and Eagle Valley in the amount of $1,700,000.00, together with interest at a rate of 6% per annum from June 3, 2005, and costs. *Id.* at ¶ 6.

At the time of the accident, Canal Insurance Company had liability insurance in effect on the tractor up to $1,000,000, and, as a result of the judgment in the Loudoun County Lawsuit, made payment to Thompson in the amount of $969,767.80, the amount remaining on its policy. *Id.* at ¶¶ 17-18. There is an unpaid balance of $730,232.20 on the judgment from the Loudoun County Lawsuit, along with interest and costs. *Id.* at ¶ 19. Thompson demanded that Sentry pay the unpaid balance, but Sentry denied the request. *Id.* at ¶ 20.

### III. LEGAL STANDARD

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996). The party seeking summary judgment has the initial burden to show the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Once a motion for summary judgment is properly made and supported, the *opposing*

4

party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). To defeat a properly supported motion for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 247-48 ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original). Whether a fact is considered "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. *Id.* at 255; *see also Lettieri v. Equant Inc.*, 478 F.3d 640, 642 (4th Cir. 2007).

## IV. ANALYSIS

Sentry argues: (1) that the Trailmobile was not covered under the Sentry policy; and (2) that the MCS-90 does not obligate Sentry to provide coverage for a judgment against any party other than Milligan. Thompson argues that under the terms of the MCS-90 and the terms of the Sentry policy, when read together, the Trailmobile becomes a "covered auto" and Brown, a permissive driver of the Trailmobile, becomes an "insured."[1] At the hearing on the cross

---

[1] The parties have also engaged with respect to an additional issue under the Sentry policy. The Sentry policy excludes from the policy's definition of "insured" certain truckers and their employees who do not have a specific type of coverage under their primary insurance policy. Sentry argues that Eagle Valley and Brown are excluded from the Sentry policy's definition of "insured" for the additional reason that Eagle Valley's insurance policy did not provide the required type of liability insurance for hired autos. Sentry Mem. in Supp. at 4-5; Thompson Mem. in Opp. at 6. The Court's findings on the scope of the MCS-90 eliminate any need to address this question.

motions for summary judgment, the parties agreed these issues can be decided as a matter of law and that no material factual issues exist.[2]

### A. The MCS-90 Does Not Require Sentry to Pay Thompson For Judgments Against Brown or Eagle Valley

The parties agree that the Trailmobile was not listed as a covered vehicle under the Sentry policy. Stipulations at ¶ 12. Therefore, the question is whether the MCS-90 requires coverage for the unpaid portion of the judgment against Brown or Eagle Valley or whether the MCS-90 limits Sentry's obligation to pay Thompson to only judgments against the named insured (Milligan).

### 1. Motor Carrier's Proof of Financial Responsibility

The Federal Motor Carrier Safety Administration ("FMCSA") of the USDOT requires that interstate transportation brokers and motor carriers transporting non-hazardous materials provide proof of financial responsibility in the amount of at least $750,000. 49 U.S.C. § 31139(b)(2); *see also* 49 C.F.R. § 387.7(d). A primary purpose of this statute and the financial responsibility regulations promulgated thereunder is to protect the public by ensuring that motor carriers will be able to satisfy judgments up to at least $750,000 resulting from acts of negligence. *See, e.g., Adams v. Royal Indemnity Co.*, 99 F.3d 964, 968 (10th Cir. 1996); *Empire Fire and Marine Ins. Co. v. Guaranty Nat'l Ins. Co.*, 868 F.2d 357, 362-63 (10th Cir. 1989);

---

[2] Counsel for Thompson noted at the hearing on the parties' cross-motions for summary judgment on September 17, 2009, that the only potential factual issue that remains in this case is the scope of the Canal Insurance policy that provided coverage for the tractor. The Court finds that the scope of the Canal Insurance does not present a genuine issue of material fact. Thompson also argues in her Memorandum of Law in Support of her Motion for Summary Judgment that summary judgment may be inappropriate because a fact issue exists as to whether Milligan was a carrier or a broker and Brown was an "employee" of Milligan. At the hearing on September 17, 2009, however, both parties agreed that these questions are not properly before the Court at this time because the parties are currently litigating the issues in Loudoun County. Therefore, this argument also does not present a genuine issue of material fact sufficient to preclude the court from ruling on the cross-motions for summary judgment.

*Armstrong v. United States Fire Ins. Co.*, 606 F. Supp. 2d 794, 822 (E.D. Tenn. 2009). Regulated motor carriers are required to provide proof of financial responsibility and may do so in one of three ways: (1) a surety's issuance of the "Motor Carrier Surety Bond for Public Liability Under Section 30 of the Motor Carrier Act of 1980," (Form MCS-82); (2) a written decision, order, or authorization of the FMCSA authorizing a motor carrier to self-insure; or (3) insurance that provides the coverage set forth in the MCS-90 form promulgated by the USDOT. 49 C.F.R. § 387.7(d). Thus, it is not necessary that a motor carrier obtain insurance so long as the carrier obtains a surety bond in the amount of $750,000 or obtains permission to self-insure. This regulatory framework sets the backdrop for the Court's analysis.

### 2. The Sentry Policy and the MCS-90

Milligan, as a regulated motor carrier, was required to provide proof to the USDOT of financial responsibility. To comply with the requirement, Milligan arranged for Sentry to issue the MCS-90, one of the three approved methods of proving financial responsibility under 49 C.F.R. § 387.7(d). The MCS-90 states that Sentry would pay up to $750,000.00 for any "final judgment recovered against the insured for public liability resulting from negligence." Stipulations at ¶ 15; Sentry Mem. in Supp., Exh. H (MCS-90). According to its terms, the MCS-90 provides coverage "regardless of whether or not each motor vehicle is specifically described in the policy." Sentry Mem. in Supp., Exh. H (MCS-90). Under a plain reading of the MCS-90, then, the MCS-90 requires Sentry to pay for judgments against the insured for accidents involving the Trailmobile, even though the Trailmobile is not specifically listed in the Sentry policy. The MCS-90 lists Milligan as the insured. Mem. in Supp., Exh. H (MCS-90)

The Sentry policy includes as an insured: (1) Milligan, the named insured; and (2) "[a]nyone else while using with your permission a covered 'auto' you own, hire or borrow." Sentry Mem. in Supp., Exh. G at 112, "Section II – Liability Coverage." Thompson argues that

7

the MCS-90 should be read essentially as an amendment to the Sentry Policy so the Trailmobile is a "covered auto" and Brown, as a permissive user of the Trailmobile, becomes an "insured." In support of her position, Thompson relies heavily on *Adams*, 99 F.3d at 966 and *John Deere Ins. Co. v. Nueva*, 229 F.3d 853 (9th Cir. 2000).

In *Adams*, Adams was severely injured in an accident involving a tractor trailer driven by Hofer and owned by his father-in-law, Geigley. Adams obtained a one million dollar judgment against Hofer. At the time of the accident, Royal insurance company insured Geigley, but the policy in effect did not specifically include the trailer as a covered auto. The court found that though the insured trailer was not specifically covered in the policy, the MCS-90 negated the policy's limitation of coverage to only the policy's listed vehicles. *Adams*, 99 F.3d at 970. For that reason, the court held that the MCS-90 modified the policy so that all vehicles owned by Geigley were covered by the Royal policy and Hofer, who had used the vehicle with permission, was an insured because the policy's definition of insured was one who owns, hires, or borrows a covered auto. Royal was therefore liable under Geigley's policy to Adams for the judgment Adams obtained against Hofer. *Id.* Similarly, in *Nueva*, the court, finding the effect of the MCS-90 "inescapable," held that the MCS-90's definition of "insured" must include permissive users of non-covered autos since limiting the definition of "insured" to only the "named insured" would contradict the terms of the policy that included permissive users of covered autos in the definition of "insureds." *Nueva*, 229 F.3d at 859.[3]

On the other hand, Sentry argues that both *Adams* and *Nueva* were wrongly decided because the courts in those cases failed to apply the regulatory definition of "insured" that

---

[3] Thompson also cites, without discussing, two state court cases, *Lynch v. Yob*, 768 N.E. 2d 1158 (Ohio 2000) and *Pierre v. Providence Washington Ins. Co.*, 784 N.E. 2d 52 (N.Y. 2002) in which the MCS-90 is found to incorporate the terms of the underlying insurance policies. These cases rely exclusively on the reasoning and holdings in *Adams* and *Nueva*, however, and offer no additional rationale or reasoning for this Court to consider.

applies to the coverage afforded under the MCS-90. Specifically, Sentry argues that only a judgment against the named insured motor carrier (here, Milligan) would trigger coverage under the MCS-90 since the USDOT has defined "insured" in the MCS-90 as "the motor carrier named in the policy of insurance, surety bond, endorsement, or notice of cancellation, and also the fiduciary of such motor carrier." 49 C.F.R. § 387.5. Sentry also cites cases finding that the predecessor to the MCS-90, the BMC-90 endorsement, was consistently interpreted as limiting coverage to judgments against the name insureds, regardless of the terms of the insurance policy. *See, e.g., Nat'l Mutual Ins. Co. of the Dist. Of Columbia v. Liberty Mutual Ins. Co.*, 196 F.2d 597 (D.C. Cir. 1952); *William v. Liberty Mutual Ins. Co.*, 496 F.2d 131, 138 (8th Cir. 1974). Finally, Sentry relies on *OOIDA Risk Retention Group, Inc. v. Williams*, 579 F.3d 469 (5th Cir. 2009) and *Armstrong v. United States Fire Ins. Co.*, 606 F. Supp. 2d 794 (E.D. Tenn. 2009), both of which recently addressed the same question and both of which, contrary to *Adams* and *Nueva*, interpreted the MCS-90 to require payment for a judgment against only the named insured.[4] In explaining its conclusion, the court in *Armstrong* relied on the language of the statute and regulations themselves, which contemplate a judgment against the registered motor carrier; the body of the MCS-90; and the FMCSA's regulatory guidance. *Id.* at 824-25.

This Court agrees with the reasoning in *Armstrong*. This Court's analysis, like the court in *Armstrong*, begins with the statute and regulations that provide the context for the MCS-90.

---

[4] In *Armstrong*, the court attempted to reconcile the holdings of *Adams* and *Nueva* with the statutory and regulatory context of the MCS-90 and summed up that dilemma as follows:

> Does the Court interpret the MCS-90 to determine the meaning of 'the insured' by reading the MCS-90 in conjunction with the basic [policy at issue]? Or, does the Court interpret the meaning of 'the insured' in the context of the statutory and regulatory framework and by reference to the definitions contained in the regulations?

*Id.* at 823. The court decided it must rely on the statutory and regulatory framework.

9

First, the statute itself requires that insurance "be sufficient to pay . . . for each final judgment against the registrant." 49 U.S.C. § 13906(a)(1). Thus, under the statute, the purpose of the insurance is to ensure payment for a judgment against the registered motor carrier (here, Milligan) up to $750,000.

Second, the regulations unambiguously define "insured" in the context of the MCS-90 as "the motor carrier named in the policy of insurance, surety bond, endorsement, or notice of cancellation, and also the fiduciary of such motor carrier." 49 C.F.R. § 387.5.[5] The FMCSA's enforcement guidance reinforces this definition.[6] In its "Regulatory Guidance for Forms used to Establish Minimum Levels of Financial Responsibility of Motor Carriers," Docket No. FMCSA 2005-22470, 70 Fed. Reg. 58065 (Oct. 5, 2005), the FMCSA states in the Supplementary Information section:

> FMCSA received a petition for rulemaking . . . to amend Form MCS-90, Endorsement for Motor Carrier Policies of Insurance for Public Liability, to incorporate several changes, most of which were suggested to clarify the meaning of Form MCS-90. . . . The

---

[5] In Defendant/Counter Claimant's Response to Plaintiff's Letter, filed on October 13, 2009, after the September 17, 2009 hearing on the cross-motions for summary judgment, Thompson raises, for the first time, an argument that the regulatory definition is for "insured and principal" and not "insured." Therefore, she argues, the definition does not necessarily apply unambiguously to "insured" in the MCS-90, which is an arguably separate concept from "insured and principal." The Court does not find that argument persuasive in light of the language of the regulatory definition and the FMCSA enforcement guidance.

[6] Generally, an agency's interpretation of an ambiguous statute is controlling, unless erroneous or inconsistent with the regulations. *Auer v. Robbins*, 519 v. 452, 457, 117 S. Ct. 905, 909 (1997); *Shipbuilders Council of America v. U.S. Coast Guard*, --- F.3d ---, Nos. 08-1546, 08-1702, 2009 WL 2581335 (4th Cir. Aug. 21, 2009). Where that interpretation is proffered in enforcement guidance that is not subject to the Administrative Procedure Act, it is "entitled to respect" but only to the extent that the interpretation has the "power to persuade." *Christensen v. Harris County*, 529 U.S. 576, 587, 120 S. Ct. 1655, 1663 (2000). Here, the enforcement guidance was not subject to public notice and comment. Therefore, it is subject to "respect" to the extent it has the "power to persuade." The Court finds the enforcement guidance persuasive. It does not interpret an ambiguous regulation, but rather comments on an unambiguous one since 49 C.F.R. § 387.5 clearly states that "insured" means the motor carrier named in the policy of insurance.

10

> petitioners contended changes were necessary in light of Federal and State court decisions that they claimed misconstrued Form MCS-90 to require insurance companies to pay damages for negligent operation of a vehicle owned by the insured motor carrier but not covered by its insurance policy, even when no judgment had been obtained against the insured motor carrier. The Petitioners' primary concern was to have the agency clarify that the word "insured" in the Form MCS-90 means "named insured."

While the FMCSA denied the petition for rulemaking, it explained that the concerns could be "adequately addressed . . . . through formal agency guidance."[7] In explaining the Forms section of Part 387 of the Minimum Levels of Financial Responsibility for Motor Carriers regulations in its Regulatory Guidance, the FMCSA stated, "Form[] MCS-90 . . . [is] not intended, and do[es] not purport, to require insurance companies or sureties to satisfy a judgment against any party other than the motor carrier named in the endorsement or its fiduciary." *Id.*

Finally, in finding that the MCS-90 should not be read to incorporate terms of the Sentry policy as a whole, the Court finds significant that the regulations do not require a motor carrier to provide proof of insurance, but rather require only proof of financial responsibility up to $750,000 through one of three ways. *See* 49 C.F.R. § 387.7(d) (three ways for a motor carrier to fulfill obligation of proving financial responsibility include MCS-90, surety bond, and order of the FMCSA permitting self-insurance). Milligan could therefore have satisfied his statutory financial responsibility requirements through a surety bond or, with permission, as a self-insured. Had Milligan fulfilled his obligation in one of those ways, there would be no question that the Sentry policy terms would be inapplicable. Indeed, the Sentry policy would be totally irrelevant. Here, because the MCS-90 was promulgated for precisely the same purpose as a surety bond or

---

[7] Thompson argues, and the Court notes, that the guidance was promulgated after the date of the accident. The guidance did not change the law, however. It served to confirm the meaning of a well-established regulation already in existence at the time of the accident.

11

self-insurance, it would make no sense to reach a different result based on how Milligan chose to discharge his federally mandated financial responsibility duties.[8]

Moreover, neither *Adams* nor *Nuevo*, the cases on which Thompson relies, acknowledges the statutory or regulatory framework promulgating the MCS-90 or explains how the term "insured" in the MCS-90 is broader than what is defined in the governing regulations. This Court concludes that, in light of the unambiguous regulations defining "insured," and its broader statutory and regulatory context, the MCS-90 requires payment for a judgment against the named insured only. Therefore, only a judgment against Milligan would result in a payment pursuant to the MCS-90, and Sentry is not required to make a payment based on the judgment against Brown and Eagle Valley in the Loudoun County Lawsuit.

## IV. CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Summary Judgment is granted and Defendant/Counterclaimant Thompson's Motion for Summary Judgment is denied.

An appropriate Order will issue.

_____
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
October 19, 2009

---

[8] Nor is this a case where there is a tension between underlying public policy and the definition of "insured," as construed by the Court. The MCS-90 is intended in large part to protect the public by ensuring that at least $750,000 will be available to satisfy judgments against motor carriers as a result of negligence. *See, e.g., Empire Fire and Marine Ins. Co.*, 868 F.2d at 362-63 (10th Cir. 1989); *Adams*, 99 F.3d at 968; *Armstrong*, 606 F. Supp. at 822. Here, Thompson has received $969,767.80 pursuant to Eagle Valley's insurance liability policy with Canal Insurance Company, which covered the tractor.

12